Peter Bright versus United States    22-cv-8847 (PKC) (SN)
                                        19-cr-521 (PKC)


Memorandum Brief in Reply to Government's Opposition to Peter
Bright's Motion to Vacate and Set Aside His Conviction and
Sentence


Peter Bright
pro se

PRELIMINARY STATEMENT

The Government has written in response to Peter Bright's motion under 28 USC § 2255 to vacate, set aside, or correct his conviction for attempted enticement of a minor to engage in illegal sexual activity, in violation of 18 USC § 2422(b).

Bright raised four issues in his motion: the impact of the COVID-19 pandemic, and three kinds of ineffective assistance of counsel: failure to raise an entrapment defence, failure to object to Government mischaracterizations that undermined Bright's credibility on the stand, and failure to make an adequate challenge of the sufficiency of the evidence. The Government's response fails to meaningfully even acknowledge, much less oppose, the arguments that Bright has raised. Accordingly, the petition should be granted.

The Government's response to the petition addresses the arguments in a different order than the petition makes them; this reply will use the original ordering.

GROUND ONE

Mr Bright's constitutional right to a fair trial was undermined by the COVID-19 pandemic

Bright argues that he was deprived of his right to a fair trial under the Due Process Clause of the Fifth Amendment because the jurors were influenced, distracted, and pressured to reach a verdict by the onset of the COVID-19 pandemic. The Government responds that this issue is procedurally barred, as it should have been raised on direct appeal, and, in any case, meritless. Both responses are found wanting.

Bright is not procedurally barred

In his petition, Bright states that the trial record was insufficient to raise the COVID-19 issue on direct appeal. The Government states that Bright has not pointed to any new addition to the record that would redress this inadequacy, and then makes the absurd claim that Bright might be suggesting that the jury was influenced by facts not known at the time but which later emerged as more about the pandemic was learned.

The argument that the record was insufficient to sustain raising the COVID-19 issue on direct appeal came to Mr Bright from his appellate attorney, Daniel Habib, Esq. As Mr Bright recounts in his second affidavit, he repeatedly asked Habib about the possibility of raising COVID-19 on direct appeal; after investigation, Habib consistently told Bright that the trial record was insufficient to do so.

Even assuming, for the sake of argument, that the Government is correct that this issue should have been raised on direct appeal, this merely transforms the argument into one of ineffective assistance of counsel--a possibility already acknowledged in Bright's petition. Moreover, as a pro se litigant, Bright is entitled to a certain amount of leeway and latitude in the treatment of his petition; generally, courts are obliged to read pro se motions liberally, and to treat them as if they had raised the strongest argument possible that fits with the facts. As such, if the COVID-19 question is better framed as one of ineffective assistance of counsel then it is within the court's power to use such a framing.

That said, Bright's--and, by proxy, Habib's--contention that the trial record was inadequate to sustain raising COVID-19 on direct appeal has merit. The Government references the most striking omission itself: it notes that "[t]he defense did not make any other objections or seek a mistrial on the grounds of influence or pressure due to the COVID-19 pandemic". This failure to preserve the issue would substantially undermine any attempt to raise it on direct appeal, and it is likely this lack of preservation that was the very thing that Habib was concerned about when he advised Bright that the COVID-19 issue could not be raised on direct appeal, but that it should be raised in a § 2255 motion.

Lack of preservation is not the only problem with the trial record. In contrast to the record in US vs Andrews, the record in Bright's trial lacks any meaningful reference to, for example, the national declaration of a state of emergency; the New York State declaration of a state of emergency; the government guidance

that citizens stay at home, with their family unit, and avoid mixing with strangers; and the closure of New York's schools. In evaluating the likely impact of COVID-19 on the jurors' deliberations, all of this information would be germane. All of this information was available at the time the jury deliberated--contrary to the Government's claim, this does not require consideration of any facts discovered after the jury returned its verdict.

Under Rule 606, we might also inquire into which of this information the jury became aware of. The Government correctly points out that Rule 606 does not permit testimony from the jurors regarding their internal deliberations, but it does allow testimony about what they learned about the COVID-19 pandemic, and when they learned about it. Using this information, the court must then make an "independent determination of the likely effect" on the outcome (US vs Ruggiero, 1995). In so doing, the court must conduct "an objective analysis by considering the probable effect of the [...] information on a hypothetical average juror".

To aid in making this determination, Judge Englemeyer's commentary in US vs Andrews is enlightening. The judge in Andrews was speaking on the very morning of the day that Bright's jury delivered its verdict; as a snapshot of the fears and concerns held by citizens at the time of Bright's trial, it is hard to imagine a better source than a federal judge. Judges are considered and careful when they speak; they are not prone to bombast and fearmongering. That Judge Englemeyer felt that no jury could fairly deliberate is extremely telling.

It is true that, as Bright's petition conceded and the Government states in its opposition, the Andrews trial was at a different stage than Bright's. The Andrews trial was expected to last a further two or three days; Bright's had gone to the jury and was being deliberated. But this difference is of only marginal significance. Judge Englemeyer was explicit that his concern was not the health of the witnesses still to testify, or the attorneys seated at their tables. Indeed, he was satisfied that suitable protective measures could be put in place to safeguard their health. His concern was the jury--their close proximity in the jury box, in the jury room, their travel to and from the court,

their use of shared bathroom facilities. The Government makes much of the fact that Bright's jury did not express any inability to perform their sworn duties. This, too, does not distinguish Bright's trial from Andrews; the Government in that case did not demand that the jury voice any such concern, and the jury did not do so. And it would be a bold juror who volunteered such an opinion: reneging on their promise would risk admonishment by the judge, and would likely serve to further extend the trial and hence the exposure to the very risks that the juror was worried about.

The Government has offered no meaningful, good faith basis to distinguish the circumstances of Bright's trial from Andrews. The Government agreed that the Andrews jury could not be expected to deliver a safe verdict given the threat posed by the COVID-19 pandemic; the same holds true of Bright's jury. The Court is urged to read Judge Englemeyer's commentary in full, and note his focus on the jury and its deliberations.

GROUND TWO

Bright's trial counsel was ineffective for failing to raise an entrapment defence

The Government argues that the failure to offer an entrapment defence was a reasonable strategic decision and that, in any event, it did not prejudice Bright. To justify this position, the Government argues that Bright showed willingness to commit the crime (which would show predisposition to commit the crime), and that since entrapment is rarely successful then it is reasonable for an attorney to ignore it.

In making these arguments, the Government is ignoring the particular facts of Bright's case, and the circumstances surrounding Bright's supposed willingness to commit the crime. It is decidedly unusual for a prosecutor to acknowledge that a defendant may very well not have been looking for any criminal activity when first contacted by an undercover officer—but, as the original petition makes clear, that is what happens in this case. It is unusual for a defendant in a 2422(b) case to have no child pornography, no attempts at communicating with minors, and, indeed, no indications whatsoever of any kind of sexual interest in prepubescent minors. Bright has an unusually strong argument for Government inducement and lack of predisposition.



Moreover, the trial record that the Government now depends on to demonstrate willingness is a trial record in which entrapment was not raised. Bright could have made attacks on the claim of willingness had it been at issue; for example, his near-immediate comment about "tested" partners (meaning, partners with a set of STD test results) would strongly indicate that he still had in mind adult partners. After all, a mother of a seven- and nine-year old child is hardly likely to take those children to a sexual health clinic and demand a full set of STD screenings for them. Such a request could only lead to unwanted scrutiny and law enforcement involvement.

Further, this purported willingness was only shown after the undercover agent had indicated that she herself had had similar childhood experiences to those she was soliciting for her children; her wish to replicate those experiences served to downplay the harm and potentially weaken Bright's resistance to performing such acts. This is why the analysis of predisposition should consider a defendant's actions prior to communication with the undercover agent.

That entrapment is rarely successful in general is also not a convincing argument; Bright's counsel is being faulted not for some general aversion to entrapment, but for failing to offer it in this specific case. Defences of all kinds usually fail, as on average, the Government prevails at trial; does this mean that an attorney would be justified in failing to mount any defence at all, because defences are always rarely successful? Is every appellate attorney now immune from claims of ineffective assistance, on the basis that appeals are almost always unsuccessful anyway?

The question is not, or at least, should not be, whether entrapment defences in general are offered or succeed; the question is whether the particular facts of Bright's case lend themselves to an entrapment defence. As Gallicchio commented to Bright on several occasions, they do exactly that. Entrapment may not be a common defence in general, but it is not unusual in 2422(b) cases; as the petition makes clear, appellate courts have found error where entrapment instructions were not given, and that was in cases with facts even less favourable to the defendant than Bright's.

This is particularly significant in a case where the Government's evidence is far from overwhelming. In its opposition, the Government claims that the evidence was

"overwhelming". This is not a claim that can credibly be made. Second Circuit case law is clear that a previous hung jury--especially one where the deadlock was not due to a single hold-out in an eleven-to-one split--is demonstration that a case was closely decided. Even with the brief length of the evidence portion of the trial, and the immense pressure to return a verdict and get back home to relative safety from the ravages of COVID-19, the jury in Bright's second trial took the better part of a day to deliberate. This much deliberation, in proportion to the length of the trial, makes clear that the jury had difficulty reaching a verdict; as with United States vs Jean-Baptiste (1999), it is "plain that the jury did not find the government's case to be overwhelming".

That Gallicchio did not properly instruct Bright on the nature of an entrapment defence--specifically, that it could be made in conjunction with a denial of the crime, and that it would not require Bright to testify that he was entrapped (thereby risking impeachment)--precludes the decision to eschew the defence from being any kind of tactical decision. Trial strategy cannot be properly determined on the basis of faulty information. Bright attests that he would have insisted on the defence had he been properly advised on it; with the outcome so closely decided, the possibility of a different outcome is significant.

GROUND THREE

Although the Government claims opposition to the argument that Bright's trial counsel was ineffective for failing to make certain objections, the Government has failed to meaningfully engage with the argument being made.

The argument made in the petition is that the prosecutor made statements that fundamentally misrepresented the evidence offered in the case, in such a way as to undercut Bright's credibility.

The Government has responded that there was no basis for challenging the prosecutor's description of Bright as a journalist, and no grounds for challenging the testimony of Bright's editor-in-chief, vis-a-vis whether Bright was an investigative journalist or wrote about child exploitation.

The Government's repsonse ignores, however, the thrust of the argument being made: the prosecutor asserted that Bright claimed to be an investigative journalist,

and claimed that Bright defended his meeting with the undercover by claiming that he was working on a story.

The problem with this argument is that it is untrue. It is a lie. Bright never claimed to be an investigative journalist, and he never claimed that he met with the undercover to work on a story. The prosecutor invented this claim, and even went so far as to call a witness for the sole purpose of debunking the claim. What he failed to do--and could not have done--was show any evidence that investigative journalism played any role whatsoever in Bright's defence.

The Government should not be allowed to say things that it knows to be untrue. It should not be allowed to put words into a defendant's mouth when the defendant never spoke those words; it should not be allowed to claim that a defendant is making an argument he did not make; it should not be allowed to call and question witnesses to debunk theories that are entirely of the Government's own invention.

Objections to such arguments and questions would not be futile; they would have served a valuable role, by preventing the Government from undermining the defendant's credibility. This was a trial that hinged entirely on the question of intent. The fact of Bright's meeting the undercover agent was not in dispute; the sole question was his purpose for that meeting. His testimony, and the jury's belief of that testimony, was critical. The prosecutor planted within the jurors' minds the seed of an idea--that Bright posed as an investigative journalist working on a story-- and then showed that Bright must have been lying when he made such a claim. Bright's attorney let this stand unchallenged and unopposed. This was ineffective assistance.

The Government's opposition to the claim that Gallicchio offered ineffective assistance by failing to object to statements made in the Government's closing argument is similarly disingenuous. Just as he did with Bright, the prosecutor unfairly undermined the testimony of Bright's expert witness by lying about what that witness testified. Contrary to the opposition, the prosecutor did not merely argue that "the defense of age play is irrelevant to whether Bright intended to have sex with children"; he went further than this. He said, "the defence wants to make this trial into something it isn't about, to frame it as if, if he is into kink, then he cannot intend to have sex with minors".

Bright's defence did not attempt to do this. It is striking that, just as the Government's opposition failed to provide any evidence to justify its defence of the prosecutor's dishonest claims regarding investigative journalism, it has similarly pointed to nothing in the trial record that supports the prosecutor's mischaracterization of Bright's defence. This is because it cannot; there is nothing in the trial record to support this argument. Bright's counsel should have objected.

The same is true of the prosecutor's unfounded and inaccurate claim that Bright said that he "forgot" about the chat logs.

Further, the Government asserts that objections to these dishonest statements by the prosecutor would have been futile "[i]n the light of the significant evidence against the defendant". Again, this was a closely decided case. The evidence against Bright was not "significant"; the very same evidence had proven incapable of supporting a verdict in a previous trial, a fact that strongly argues against any such claim. In such a closely decided case, the impact of these unfair attacks on Bright's credibility, the unfair attacks on Bright's expert's credibility, and the misrepresentation of the defence case were very likely influential. The prosecutor plainly felt that it was important to discredit Bright by inventing his investigative journalist theory: one of the few witnesses he called was there solely to debunk that theory.

Objections to these issues would also have served the purpose of undermining the prosecutor, by making explicit to the jury that he was willing to lie, to try to pull the wool over their eyes, in order to secure a conviction. Courts have long recognized that prosecutors, as representative of the Government, are regarded by juries as trustworthy (see, for example, the lengthy quotation in the original petition). Puncturing this aura of authority can only be helpful to a defendant.

### GROUND FOUR

Bright's counsel was ineffective for failing to highlight the evidential insufficiency

Once again, the Government has written that it opposes the claim but offered little in the way of engagement with the claim. Once again, the Government makes the unsupportable assertion that the evidence was overwhelming; this

remains unjustifiable.

Bright's Rule 29 motions focused on the fact that the undercover agent was inviting Bright to engage in a pre-existing plan, and hence that Bright did not, and had no need to, entice any minors to engage in sexual activity--in essence, the argument was that they had already been enticed, by their mother.

This was ineffective assistance, because it neglected to raise a much more fundamental point: in the prosecutor's own words, Bright's intention was to engage in legal conduct. The last thing that the jury heard from the Government, the last thing that the jury heard from either side, was that Bright's intention was to teach the children about condoms, by putting a condom onto a banana or similar. This conduct would not violate any laws. The Government itself made the argument that the evidence in the case points to legal behaviour.

This is highly unusual. Prosecutors are not normally in the business of arguing that a defendant was intending to engage in a legal activity, and yet, that is what the prosecutor in Bright's case did. This extraordinary concession from the Government should have been highlighted in any claim of evidential insufficiency. If the Government itself is arguing that the evidence indicates the desire to perform some legal activity, it cannot be the case that criminal intent was proven, much less proven beyond a reasonable doubt.

On the basis of the Government's rebuttal argument, Bright should have been acquitted. Bright's counsel failed to draw attention to this argument, and failed to preserve the issue. It is hard to imagine something more prejudicial to a defendant.

## CONCLUSION

Bright's conviction should be set aside, and a judgement of acquittal entered. Failing that, a new trial should be ordered. The Government has paid lip service to its opposition, but has substantially ignored the claims that Bright's petition raised; as such, Bright's petition should be regarded as unopposed. Should the Court require further evidence to support the claims then an evidentiary hearing must be held, and Bright must be appointed counsel.

Respectfully Submitted,

*[signature]*

Peter Bright 76309-054
FCI Petersburg Medium
PO Box 1000
Petersburg, VA 23804

CERTIFIED MAIL

7020 1810 0002 2844 4975

USM P3
SDNY

⇔76309-054⇔
Pro Se Intake Unit
500 Pearl ST
Room 200
NEW YORK, NY 10007
United States

LEGAL MAIL